# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **FRANK J. PHILLIPS,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-17-1581 |
| **PRINCE GEORGE'S COMMUNITY COLLEGE, CHARLENE M. DUKES, PRESIDENT,** *et al.*, | * * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Frank J. Phillips worked for Prince George's Community College ("the College") as an Associate Professor. He alleges that he experienced racial discrimination and a hostile work environment based on his department chair's actions in 2015 and 2016. He filed a charge with the Equal Employment Opportunity Commission ("EEOC") in March 2015 and then filed this suit in 2017. Now pending is a Motion to Dismiss that the College, which asserts that it is the proper defendant, filed, ECF No. 18.[1] Because Phillips failed to exhaust his administrative remedies for his racial harassment and hostile work environment and racial bias claims (Counts II and III) and fails to state a claim for retaliation (Count I), I will grant the Motion and dismiss his Amended Complaint, ECF No. 17.

---

[1] The parties fully briefed the Motion. ECF Nos. 18-1, 21, 22. A hearing is not necessary. *See* Loc. R. 105.6.

**<u>Background</u>**[2]

Phillips began working for the College as an Associate Professor in January 2008 and, "[f]or approximately 7 years, he received stellar reviews by students and faculty alike." Am. Compl. ¶¶ 8–9. Then, "[i]n 2015, the Department Chair, Tammy O'Donnell accused him of being unprofessional," based on complaints she had received "about his teaching style," and she "spoke to him harshly," "constantly harassed" him about his alleged unprofessionalism, and "verbally reprimanded him for not completing his Major Functional Responsibilities Report." *Id.* ¶¶ 10–11, 13, 41. She also gave him "a difficult teaching schedule" with "four to five preparations" (a term he does not explain) and "courses . . . which he was untrained to teach." *Id.* ¶¶ 12–14. He also claims that O'Donnell "told mistruths about him [being] an ineffective and uncaring Professor." *Id.* ¶ 47.

"Phillips filed a grievance against O'Donnell in 2015 for harassment, hostile work environment, and racial discrimination." Am. Comp. ¶ 15. After that, "O'Donnell informed the whole department of Phillips' grievance[,] . . . asked individual students to file a complaint against Phillips," and changed two of his students' grades without informing or asking him. *Id.* ¶¶ 16–18. He claims that O'Donnell "continued to give [him] harsh schedules and courses for which he was untrained to teach" and, as a result, Phillips had to withdraw from the Ph.D. program in which he had enrolled at Morgan State University. *Id.* ¶ 32. He alleges that "[t]his

---

[2] "At this stage, all well-pleaded allegations in a complaint must be considered as true and all factual allegations must be construed in the light most favorable to the plaintiff." *Nam v. 2012 Inc.*, No. DKC-15-1931, 2016 WL 107198, at *3 (D. Md. Jan. 11, 2016) (citing *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999)). Documents attached to the complaint are a part of the pleadings for all purposes, Fed. R. Civ. P. 10(c), and if a written instrument attached to the complaint conflicts with the complaint's factual allegations, "the exhibit prevails," *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

racial retaliation continued during the 2015 year and beyond," including that O'Donnell "forced him to attend a workshop during Martin Luther King weekend,"[3] thereby "showing a disdain for racial sensitivities." *Id.* ¶¶ 25, 34, 37. In 2016, she placed Phillips on a Performance Improvement Plan "in order to terminate him." *Id.* ¶¶ 19, 38. At that point, Phillips took leave under the Family Medical Leave Act "based on stress, insomnia, sleep apnea, major depression and triggered Post Traumatic Stress Disorder." *Id.* ¶ 20. He was told by the new dean that he would be on a Performance Improvement Plan when he returned. *Id.* ¶ 22. Instead, he filed for disability retirement, which the Social Security Administration approved. *Id.* ¶¶ 21, 49

He alleges that the "harsh scheduling" and "multiple preparation workload" were racially based and created a hostile work environment. *Id.* ¶ 23. He sees racial bias in O'Donnell's treatment of Black faculty members, alleging that she "fir[ed] one black faculty member and sanction[ed] another, and plac[ed] Phillips on a Performance Improvement Plan," while she "gave favored schedules with fewer preparations to white teachers." *Id.* ¶¶ 24, 33. And, he claims that, of five people she hired, four were white. *Id.* ¶ 36. Phillips alleges that he filed an EEOC Charge on April 16, 2016, charging "racially based retaliation and hostile work environment." *Id.* ¶ 28. Yet, on the EEOC Charge, which he signed on April 25, 2016 and which he attached to his Complaint, he only checked the box for "retaliation" as the basis of discrimination. ECF No. 2-2.

On April 28, 2017, he filed suit against Charlene M. Dukes, President of the College, and Samuel L. Parker, Chairman of the Board of Education for the College, in the Circuit Court for Prince George's County, alleging defamation, retaliation, harassment and hostile work

---

[3] I take judicial notice that Martin Luther King, Jr. Day is observed on the third Monday of January each year. *See* Fed. R. Evid. 201(b). Thus, the "Martin Luther King weekend" following Phillips's filing of his grievance would have been in January 2016.

environment, and racial bias. ECF No. 2. Defendants removed to this Court, ECF No. 1, and sought leave to file a motion to dismiss, contending that the Complaint did not include any allegations as to the named Defendants; the statute of limitations barred the defamation claim; his harassment and racial bias claims were beyond the scope of the EEOC Charge; and he otherwise failed to state a claim. ECF No. 9.

I held a conference call with regard to the proposed motion to dismiss, and Phillips, through counsel, stated that he was suing the College. He sought leave to amend to clarify the defendant, remove the defamation claim, and address the deficiencies in the remaining claims. ECF No. 16. Phillips filed his Amended Complaint, naming "Prince George's Community College, Charlene M. Dukes, President" and "Board of Education for Prince George's Community College, Samuel Parker, Jr., Chairman" as Defendants, and bringing three claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*: racially based retaliation (Count I), racial harassment and hostile work environment (Count II), and racial bias (Count III). ECF No. 17. The College, which asserts that it is the proper Defendant, moves to dismiss all remaining claims.

## Standard of Review

"[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies." *Murphy v. Adams*, No. DKC-12-1975, 2014 WL 3845804, at \*7 (D. Md. Aug. 4, 2014) (quoting *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013)). Because the College argues, with regard to Counts II and III, that the Amended Complaint "simply fails to allege facts upon which subject matter jurisdiction can be based," the facts alleged in the Amended Complaint "are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a

4

Rule 12(b)(6) consideration." *Fontell v. MCGEO UFCW Local 1994*, No. AW-09-2526, 2010 WL 3086498, at *3 (D. Md. Aug. 6, 2010) (quoting *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982)), *aff'd*, 410 F. App'x 645 (4th Cir. 2011).

A complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).

> Ultimately, a complaint must "'permit[] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). To this end, "while a plaintiff [in an employment discrimination case] is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss, [f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002); *Twombly*, 550 U.S. at 555); *see also McCleary-Evans v. Md. Dept. of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).

*Nam v. 2012 Inc.*, No. DKC-15-1931, 2016 WL 107198, at *3 (D. Md. Jan. 11, 2016) (alterations in *Nam*).

## **Proper Defendant**

Insofar as Phillips asserts Title VII claims against Dukes or Parker in their individual capacities, those claims are dismissed because "individuals are not liable under that Act." *See*

*Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998). Additionally, the College asserts that "[t]here is no such entity" as "the Board of Education of Prince George's Community College," and that, "[t]o the extent Phillips intended to sue the College's Board of Trustees, the Board is the same as the College." Def.'s Mem. 1 n.1. Phillips does not contend otherwise and indeed, on the July 7, 2017 conference call, he clarified that he was suing the College. Accordingly, I will dismiss Dukes, Parker, and the Board of Education and construe Phillips's Amended Complaint to be against the College. *See* Fed. R. Civ. P. 1.

### **Failure to Exhaust Administrative Remedies – Counts II and III**

The College argues that Phillips failed to exhaust his administrative remedies with regard to his racial harassment and hostile work environment and racial bias claims, because he did not include these claims in his EEOC Charge. Def.'s Mem. 7. One requirement for exhausting administrative remedies is that the employee must have filed a timely charge with the EEOC. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000); *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). In a Title VII action, a plaintiff may bring "[]only those discrimination claims stated in the initial charge, those reasonably related to the original [EEOC] complaint, and those developed by reasonable investigation of the original complaint." *Jones*, 551 F.3d at 300 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)). This means that "if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation alleges discrimination on a separate basis, such as sex," the claim raised in court on a separate basis will be barred. *Id.* In establishing and applying this rule, the Fourth Circuit has "sought to strike a balance between providing notice to employers and the [agency] on the one hand and ensuring plaintiffs are not tripped up over technicalities on the other." *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012).

6

Here, Phillips, who sues for retaliation, racial harassment and hostile work environment, and racial bias, only checked the box for "retaliation" as the basis for discrimination on his EEOC Charge. In his Opposition, he argues that his claims "should be allowed"; as best I can discern, he contends that all of his claims are reasonably related to his EEOC charge. Pl.'s Mem. 8. Yet, Counts II and III allege discrimination based on race (in the form of harassment and hostile work environment in Count II and bias in Count III), and it is undisputed that he did not check the box for "discrimination based on . . . race." Further, the narrative he provided in the EEOC Charge (from which the Defendants were put on notice of the basis for his retaliation complaint), did not mention race once:

> I. I began working for the above named employer in January 2008 as an Associate Professor. I filed a grievance against my Department Chair, Tammy O'Donnell in March 2015. Since that time I have been subjected to retaliatory harassment and intimidation including, but not limited to, Ms. O'Donnell coercing students to file complaints against me, constantly being accused of unprofessionalism, and having my teaching style attacked. I have filed internal complaints regarding Ms. O'Donnell's retaliatory actions against me but nothing has been done to remedy the situation.
>
> II. I believe that I have been retaliated against for engaging in a protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended; with respect to intimidation and retaliation.

EEOC Charge.

His intake interview, however, which Phillips attached to his Amended Complaint, ECF No. 17-2, notes that the basis of his charge was "Race (black), Retaliation" and the "Issue" raised was "Harassment." It presents a set of facts similar to those pled in his Amended Complaint. But, it is neither signed nor verified, as is mandatory for any EEOC charge, either formal or informal. *See Edelman v. Lynchburg Coll.*, 535 U.S. 106, 108–09 (2002); *Balazs v. Liebenthal*, 32 F.3d 151, 156 (4th Cir. 1994). And, even though Phillips verified his later-filed EEOC Charge, a plaintiff does not exhaust administrative remedies as to claims stated as part of the

7

intake process but omitted from the formal charge. *See Balas*, 711 F.3d at 408 ("In determining what claims a plaintiff properly alleged before the EEOC, we may look only to the charge filed with that agency. We have noted that 'it would be objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge, given that one of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it.' *Sloop v. Mem'l Mission Hosp., Inc.,* 198 F.3d 147, 149 (4th Cir. 1999). *Sloop*'s reasoning applies here, despite Balas's contentions to the contrary. Balas argues that her letters, written before formal charges were filed, should be treated differently. We disagree."). Therefore, Phillips did not exhaust his administrative remedies by alleging race and harassment in his intake interview, but not his EEOC Charge. *See id.*; *see also Edelman*, 535 U.S. at 108–09; *Balasz*, 32 F.3d at 156.

But, accepting Phillips's allegations as true, certainly a reasonable investigation of the EEOC Charge would inform the College that the grievance he filed against O'Donnell in 2015 was "for harassment, hostile work environment, and racial discrimination," Am. Comp. ¶ 15, and that he mentioned race and harassment in his intake interview. But, given that he affirmatively raised these claims in his grievance and his EEOC intake interview and then neither mentioned race nor checked the box for race on his formal charge, it would be equally (or more) reasonable for the College to conclude that he was not pursuing any claims of race-based discrimination, having chosen not to include them from his charge. *See Balas*, 711 F.3d at 408. Thus, Phillips's racial harassment and hostile work environment and racial bias claims are not "stated in the initial charge, . . . reasonably related to the original [EEOC] complaint, [or] developed by reasonable investigation of the original complaint." *See Jones*, 551 F.3d at 300.

Consequently, the EEOC Charge did not put the College on notice of a claim of racial discrimination, and allowing the race-based discrimination claims to proceed would defeat the purpose of the EEOC filing. *See Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999) ("[O]ne of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it."). Therefore he has not exhausted his administrative remedies for these claims. *See Jones*, 551 F.3d at 300; *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132–33 (4th Cir. 2004) (affirming summary judgment on claims of color and sex discrimination, because EEOC charge only alleged race discrimination); *Krpan v. Bd. of Educ. of Howard Cty.*, No. ELH-12-2789, 2013 WL 4400475, at *5–6 (D. Md. Aug. 15, 2013) (granting motion to dismiss count for discrimination based on national origin because plaintiff "did not include such a claim in his complaint to the EEOC"); *Riley v. Tech. & Mgmt. Servs. Corp.*, 872 F. Supp. 1454, 1459 (D. Md. 1995) (rejecting claims of hostile work environment and sexual harassment presented for the first time in plaintiffs' opposition because the EEO charges only alleged discrimination). Accordingly, this Court lacks jurisdiction over Phillips's racial harassment and hostile work environment and racial bias claims (Counts II and III). *See Balas*, 711 F.3d at 406.

## **Failure to State a Claim – Count I (Retaliation)**

The elements of a Title VII retaliation claim are: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). To survive the College's Motion to Dismiss, Phillips's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

9

Phillips filed his grievance against O'Donnell in March 2015. EEOC Charge; Am. Compl. ¶ 15. A number of the employment actions Phillips alleges occurred before that date and cannot be considered. *See Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 98 (4th Cir. 2016) ("Retaliatory conduct, by its very nature, must come *after* the protected activity." (citing *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 652, 657 (4th Cir. 1998))). As for actions taken after the grievance, he claims that O'Donnell (1) "informed the whole department of Phillips' grievance," (2) "asked individual students to file a complaint against Phillips," (3) changed two of his students' grades without informing or asking him, (4) gave him "harsh schedules" in 2015, (5) required him to teach courses that "he was untrained to teach" in 2015, (6) required his attendance at a conference over Martin Luther King, Jr. weekend in January 2016, and (7) placed him on a Performance Improvement Plan in 2016, "in order to terminate him." Am. Compl. ¶¶ 16–19, 25, 32, 34, 37, 38.

"Title VII . . . does not set forth 'a general civility code for the American workplace.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 80 (1998)). Thus, actions qualify as adverse employment actions only if "a reasonable employee would have found the challenged action[s] materially adverse, which in this context means [they] well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Stennis v. Bowie State Univ.*, No. 17-1345, --- F.3d ---, 2017 WL 6604549, at *2 (4th Cir. Dec. 27, 2017) (quoting *Burlington N.*, 548 U.S. at 68 (internal quotation marks omitted)). To be adverse, the action "need not affect the terms and conditions of employment," but "there must be 'some direct or indirect impact on an individual's employment as opposed to harms immaterially related to it.'" *Id.* (quoting *Adams v. Anne Arundel Cty. Pub. Schs.*, 789 F.3d 422, 431 (4th Cir. 2015)).

Notably, "[t]he anti-retaliation provision of Title VII does not protect against 'petty slights, minor annoyances, and simple lack of good manners.'" *Williams v. Baltimore Cty., Md.*, No. ELH-13-03445, 2016 WL 3745980, at *26 (D. Md. Mar. 11, 2016) (quoting *Geist v. Gill/Kardash P'ship*, 671 F. Supp. 2d 729, 738 (D. Md. 2009)). Issuing a personal improvement plan, 'a verbal reprimand, 'a formal letter of reprimand,' or 'a proposed termination' does not constitute an adverse employment action in a retaliation claim. *Wonasue v. University of Maryland Alumni Ass'n,* 984 F. Supp. 2d 480, 492 (D. Md. 2013) (quoting *Rock v. McHugh,* 819 F. Supp. 2d 456, 470–71 (D. Md. 2011)). A change in work schedule to less favorable hours is not typically an adverse employment action. *See Parsons v. Wynne*, 221 F. App'x 197, 198 (4th Cir. 2007) (concluding that "removal from [an] alternate work schedule" was not an adverse employment action because it would not "have 'dissuaded a reasonable worker from making or supporting a charge of discrimination'"). But, a scheduling change may be materially adverse when accompanied by additional allegations as to the impact of the schedule change. *See Burlington N*., 548 U.S. at 69 (noting that a schedule change could "matter enormously" under certain circumstances, such as "to a young mother with school-age children"). And, a new work assignment "can . . . form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect." *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999).

Thus, O'Donnell's requirements that Phillips work "harsh schedules" and teach classes he "was untrained to teach" may qualify as adverse employment actions, given that he alleges that this schedule and assignment change caused him to drop out of a Ph.D. program. *See Burlington N*., 548 U.S. at 69; *Parsons*, 221 F. App'x at 198; *Boone*, 178 F.3d at 256. And, his allegation that she asked students to file complaints against him qualifies as an adverse

11

employment action because the possibility of mounting complaints against an employee could dissuade a reasonable employee from filing another complaint. *See Stennis*, 2017 WL 6604549, at *2. But, his allegations about O'Donnell requiring him to attend a conference on Martin Luther King, Jr. weekend, informing others about the grievance, changing Phillips's students' grades, and implementing a Performance Improvement Plan were not adverse employment actions. *See Williams*, 2016 WL 3745980, at *26; *Wonasue*, 984 F. Supp. 2d at 492; *Rock*, 819 F. Supp. 2d at 470–71.

Further, the Martin Luther King, Jr. weekend conference would have occurred in January 2016, and the Performance Improvement Plan was not implemented until 2016, and therefore neither the required conference attendance nor the implementation of the Performance Improvement Plan occurred until at least nine months after Phillips filed his grievance in March 2015. This is, by far, "too long a period for Plaintiff to establish a causal relationship on temporal proximity alone." *Wilson v. City of Gaithersburg*, 121 F. Supp. 3d 478, 485–86 (D. Md. 2015); *see also Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'") (citation omitted); *Horne v. Reznick Fedder & Silverman,* 154 F. App'x 361, 364 (4th Cir. 2005) ("[A] lapse of two months between the protected activity and the adverse action is 'sufficiently long so as to weaken significantly the inference of causation.'" (quoting *King v. Rumsfeld,* 328 F.3d 145, 151 n.5 (4th Cir. 2003)); *Westmoreland v. Prince George's Cty., Md.,* 876 F. Supp. 2d 594, 607–08 (D. Md. 2012) ("Although there is no bright-line rule on the issue of temporal proximity, the Fourth

Circuit has held that a lapse of over three months between the protected activity and the alleged retaliation is too long to give rise to an inference of causality.").

Moreover, beyond his general allegations that the allegedly adverse actions occurred in 2015 and 2016, Phillips had not identified when any of these actions, including those that could be adverse employment actions, began. In *German v. Akal Security, Inc.*, No. CCB-11-1242, 2011 WL 5974619, at *6 (D. Md. Nov. 29, 2011), this Court concluded that a retaliation claim was subject to dismissal because there was "only [one] protected activity in the complaint with an identifiable date" and "only [one] subsequent adverse employer action cited with sufficient specificity." The Court reasoned that the "four-month gap [between the events] may be too long to provide a causal link between the two actions." *Id.* The Court also observed that the plaintiff's allegation that "her earlier demotion was 'a result of Plaintiff complaining of Defendants' discriminatory and retaliatory conduct,' . . . lack[ed] sufficient information to infer causality through temporal proximity." *Id.*

Here, Defendants complied with the order that I issued relating to the filing of motions, ECF No. 7. That procedure requires a party that desires to file a motion to file a short letter describing the factual and legal basis for the intended motion. I then schedule a conference call to discuss the alleged pleading deficiencies with the parties, and I determine whether the party that filed the allegedly deficient pleading wishes to have the opportunity to file an amended complaint to address the deficiencies. The purpose of this procedure is to afford the plaintiff a fair opportunity to remedy the alleged deficiencies noted by the defendant. Defendants' pre-motion letter asserted that Phillips's Complaint was deficient and failed to state a claim for retaliation. Phillips had the opportunity to amend to cure the deficiencies—including the failure to plead the dates of the allegedly retaliatory acts directed towards him after he engaged in his

protected activity by filing a grievance against O'Donnell. But, as amended, the pleading still does provide any dates or more specific timeframe so as to allege that any of the actions occurred sufficiently soon after the grievance to give rise to an inference of causality. Thus, I cannot infer causation based on an allegation that events occurred in 2015, that is, at some point within nine months of when Philips filed his grievance. *See id.*; *see also Horne*, 154 F. App'x at 364; *King*, 328 F.3d at 151 n.5.

Of course, Phillips could have alleged causation on facts other than the timeline of events. *See Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007). A court "'may look to the intervening period for other evidence of retaliatory animus' which 'may be used to establish causation.'" *Westmoreland,* 876 F. Supp. 2d at 607–08 (quoting *Lettieri,* 478 F.3d at 650). But here, the alleged employment actions occurred both before and after the protected activity. The employment actions that preceded the filing of the grievance against O'Donnell cannot, by definition, be retaliation for having done so. *See Hall*, 637 F. App'x at 98. Accordingly, whatever O'Donnell's motivation for initiating them, it could not have been retaliatory. *See id.* Those that took place after the filing of the grievance were not of a frequency or nature sufficient to distinguish them from the pre-grievance acts—which could not have been taken with retaliatory animus. For this reason, the post-grievance conduct is sufficiently similar to the pre-grievance conduct to preclude an inference that it was the product of retaliatory intent. Moreover, the pleadings focus on the alleged racial bias animating the actions, suggesting that retaliation was not the "but-for cause" of the actions. *See Noel v. United Parcel Serv., Inc.*, No. PWG-13-1138, 2014 WL 4452667, at *8 (D. Md. Sept. 9, 2014) (noting that a plaintiff must "demonstrate not only a causal connection between his [protected activity] and [the adverse employment action], but that his [protected activity] was the 'but for' cause of that [action]." (citing *Univ. of*

*Tex. Sw. Med. Ctr. v. Nasser,* 570 U.S. 338, ____, 133 S. Ct. 2517, 2534 (2013))). Thus, the facts do not sufficiently allege any causal connection between the March 2015 grievance and the alleged adverse employment actions to bring Phillips's right to relief on his retaliation claim "above the speculative level." *See Coleman*, 626 F.3d at 190; *Lettieri,* 478 F.3d at 650; *Westmoreland,* 876 F. Supp. 2d at 607–08. Accordingly, Phillips's retaliation claim will be dismissed.

## Conclusion

In sum, the College's Motion to Dismiss, ECF No. 18, is granted. Phillips's retaliation claim is dismissed for failure to state a claim, and Phillips's harassment and hostile work environment and racial bias claims are dismissed for failure to exhaust administrative remedies.

This dismissal is with prejudice, as Defendants raised the deficiencies in their pre-motion conference request, ECF No. 9, and Phillips had the opportunity to amend his Complaint to cure the pleading deficiencies, but failed to do so. Moreover, given the legal deficiencies noted above, further amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting that reasons to deny leave to amend include, *inter alia*, "repeated failure to cure deficiencies by amendments previously allowed" and "futility of amendment"). Thus, considering Phillips's failure to state a claim in the Amended Complaint, despite the Defendants' clear explanation of the deficiencies in his initial Complaint, dismissal with prejudice is appropriate. *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013); *see also Adams v. Sw. Va. Reg'l Jail Auth.*, 524 F. App'x 899, 900 (4th Cir. 2013); *Proctor v. Wells Fargo Bank, N.A.*, No. PWG-17-113, 2018 WL 572861, at *10 (D. Md. Jan. 25, 2018).

## ORDER

Accordingly, it is, this 12th day of February, 2018 hereby ORDERED that

1. Defendants Charlene M. Dukes, Samuel L. Parker, and the Board of Education for Prince George's Community College ARE TERMINATED, and Prince George's Community College IS SUBSTITUTED as Defendant;

2. The Motion to Dismiss, ECF No. 18, IS GRANTED;

3. The Amended Complaint IS DISMISSED with prejudice; and

4. The Clerk SHALL CLOSE this case.

/S/
Paul W. Grimm
United States District Judge

lyb